**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**



DISH NETWORK L.L.C.,

§
§    Civil Action No.
§

       Plaintiff,

§
§

       v.

§
§
§

DOES 1-10,
d/b/a Lemo TV and Kemo IPTV,

§
§
§
§

       Defendants.

§
§
§

## COMPLAINT

Plaintiff DISH Network L.L.C. ("DISH") brings this suit against Defendants DOES 1-10 d/b/a Lemo TV and Kemo IPTV (collectively "Defendants").

### Nature of the Action

1.     Plaintiff DISH Network L.L.C. ("DISH") is one of the largest pay-tv providers in the United States and has millions of subscribers nationwide. This case concerns the infringement of DISH's copyrights in programming ("Works") that aired on 22 Arabic, Hindi, and Bangla language channels that DISH exclusively licensed for transmission in the United States ("Channels").

2.     While subscribers can select from a variety of legal television services, such as those offered by DISH, illegal streaming services also exist. Illegal streaming services are able to offer subscribers thousands of television channels at a fraction of the cost of legal providers such as DISH because they do not pay fees to license the content they deliver.

3.     Defendants operate an illegal streaming service known as Lemo TV and Kemo IPTV (the "Service") and sell subscriptions to access the Service ("Service Subscriptions") to subscribers

and resellers in the United States. The resellers then sell the Service Subscriptions to additional subscribers.

4.    DISH brings this suit for direct copyright infringement because Defendants are taking broadcasts or streams of the Channels and unlawfully transmitting Works aired on the Channels over the internet throughout the United States on Defendants' Service.

5.    Defendants demonstrated willfulness by continuing their conduct after receiving multiple demands from DISH to cease their infringements.

**Parties**

6.    Plaintiff DISH Network L.L.C. is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

7.    Defendants DOES 1-10 are individuals or entities operating under the names Lemo TV and Kemo IPTV and managing the websites Lemotv.com and Kemoiptv.com (collectively referred to as the "Websites"). These Defendants utilize Namecheap Inc. ("Namecheap") for hosting, domain registration, and privacy protection services, while employing Cloudflare Inc. ("Cloudflare") as a reverse proxy and pass-through security service for the Websites. Defendants obtained computer servers,[1] which they use to transmit Works to subscribers of the Service.

---

[1] Computer servers identified by Internet Protocol ("IP") addresses: 5.44.253.131; 5.44.253.132; 5.44.253.135; 5.44.253.136; 5.44.253.137; 5.44.253.138; 5.44.253.142; 5.44.253.144; 5.44.253.146; 5.44.253.148; 5.44.253.146; 5.44.253.151; 5.44.253.163; 5.44.253.173; 5.44.253.178; 5.44.253.184; 5.44.253.188; 5.44.253.234; 5.44.253.236; 181.233.124.38; 181.233.124.44; 181.233.124.53; 181.233.124.55; 181.233.124.56; 181.233.124.64; 181.233.125.21; 181.233.125.139; and 181.233.125.141 hosted by Innetra PC; 103.145.12.27; 103.145.12.28; 103.145.12.29; 103.145.12.36; 103.145.12.37; 103.145.12.38; 103.145.12.50; 103.145.12.80; and 185.53.88.107 hosted by Squitter Networks); 31.43.191.50; 185.156.74.103; and 185.156.74.135 hosted by Telkom Internet Ltd.; 23.227.146.194; 23.227.146.210; 23.227.147.170; 23.227.147.172; and 67.220.191.162 hosted by 24 Shells Inc.; 77.247.109.54; 77.247.109.55; 77.247.109.96; and 77.247.109.99 hosted by BestDC Ltd.; 103.244.145.15; 154.6.125.2; 188.241.218.163; 188.241.218.199; 188.241.218.241; 188.241.219.122; 188.241.219.18; 195.74.93.163; 195.74.93.253; and 46.229.253.27 hosted by Interkvm Host SRL; 107.155.83.26 hosted by Hivelocity, LLC; 163.123.140.162 hosted by Des Equity LLC; and 172.67.206.37 hosted by Cloudflare, Inc.

Additionally, Defendant market, sell, distribute, and promote Service Subscriptions to both subscribers and resellers[2] in the United States via the Websites. DISH anticipates that through discovery, the identities of DOES 1-10 will be uncovered, allowing DISH to amend the complaint to specify Defendants by their actual names.

<b><u>Jurisdiction and Venue</u></b>

8.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq*.

9.      Personal jurisdiction is proper against Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because Defendants provide subscribers of the Service located in Texas ("Texas Subscribers") with access to the Channels and infringed Works, and Defendants directly sell Service Subscriptions to Texas Subscribers. Defendants also sell Service Subscriptions to resellers located in Texas, knowing they are likely to resell Service Subscriptions to Texas Subscribers. Texas is home to the second largest Indian-American and fourth largest Arab-American and Bangladeshi-American populations in the United States.[3]

10.      In the alternative, the Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2). Upon information and belief, Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state unless Defendants are subject to the jurisdiction of the courts of general jurisdiction in Texas.[4] Defendants run a marketing campaign directed towards subscribers and resellers in the United States by highlighting content as being

---

[2] Defendants' resellers include individuals or entities managing the websites: Xtremehdiptv.org, Bestusiptv.com, Slingtvbox.com, 1dollariptv.com, Fubo-iptv.com, Tv-wave.com, Kemoiptv.shop, Geministreamz.us, Honeybee-tv.com, Honeybeeiptv.org, Honeybeeiptv.io, Dynastyiptv.shop, Dynastyiptv.com, Dynasty-iptv.com, Caliptostreams.com, and 4kliveiptv.com.
[3] https://www.pewresearch.org/2024/08/06/indian-americans-a-survey-data-snapshot/ (576,000 in 2022); https://worldpopulationreview.com/state-rankings/arab-population-by-state (165,625 in 2024); https://www.statimetric.com/us-ethnicity/Bangladeshi
[4] Defendants' Websites include an Anti Money Laundering Policy that references the European Union and European standards. https://lemotv.com/aml-policy/; https://kemoiptv.com/aml-policy/

"local" to the United States[5] and deliver infringing content to a United States audience. Defendants provide subscribers of the Service located in the United States ("United States Subscribers") with access to the Channels and infringed Works. Defendants directly sell Service Subscriptions to United States Subscribers. Defendants also sell Service Subscriptions to resellers located in the United States ("United States Resellers"), knowing they will resell Service Subscriptions to United States Subscribers. The United States is a high source of traffic for Defendants' Websites with approximately 82% or 55,000 visits per month coming from the United States.[6] DISH was harmed in the United States for the reasons identified above, and that harm is amplified because the Works were infringed throughout the United States and United States Subscribers nationwide avoided paying subscription fees to DISH. DISH was also harmed in the United States because it is a United States company operating in the United States and holds the copyrights at issue only for the United States.

11.    The Court's exercise of personal jurisdiction over Defendants, whether pursuant to Rule 4(k)(1)(A) or 4(k)(2), is reasonable and consistent with the United States Constitution and United States law because their purposeful interjection into Texas and the United States is substantial, the burden of them having to defend in this Court is minimal, and this Court is the most appropriate forum to decide this case. Defendants, in addition to their contacts with Texas and the United States identified above, used United States companies to support their business and promote their services, including Meta Platforms, Inc. ("Facebook/Instagram"), X Corp. ("Twitter/X"), Namecheap, and Cloudflare.[7] The United States has an interest in having its copyright laws

---

[5] https://lemotv.com/ ("full access to NCAA, NBA, NHL, NFL" and "[n]ational and local sports programming from ABC, CBC, FOX, and NBC Sports channels."); https://kemoiptv.com/ ("including the NCAA, NBA, NHL, NFL . . . [w]ith top national sports channels and local sports channels in many cities.")
[6] https://www.similarweb.com/website/lemotv.com/; https://www.similarweb.com/website/kemoiptv.com/
[7] Defendants' Facebook, Instagram, and Twitter/X accounts have been suspended, upon information and belief, because of notices of copyright infringement.

enforced in its federal courts, and DISH has an interest in protecting itself in a United States federal court, perhaps the only forum where DISH can effectively enforce its United States copyrights for infringement that occurred in the United States.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this district and under § 1391(c)(3) because upon information and belief Defendants are nonresidents that may be sued in any judicial district. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

## DISH's Copyrights

13.     DISH provides the Channels to its subscribers pursuant to agreements that it entered into with the Channels' owners or their agents ("Networks"). The Networks and Channels include the following: B4U U.S., Inc. (*B4U Movies*); Bennett, Coleman and Company Limited (*Times Now* and *Zoom*); GloboSat Entertainment LLC (*Sahara One* and *Sahara Samay*); International Media Distribution (Luxembourg) S.A.R.L. (*Al Hayah 1*, *ART Aflam 1*, *ART Aflam 2*, *ART Cima*, *Hekayat*, *LBC*, and *LBCI*); MSM Asia Limited (*SET*, *SET MAX*, and *SAB*); Soundview ATN LLC (*ATN Bangla*); Soundview Broadcasting, L.L.C. (*ATN News* and *NTV Bangla*); and World Span Media Consulting, Inc. (*CBC*, *CBC Drama*, *Melody Aflam*, and *Melody Classic*).

14.     The Networks acquire copyrights in the Works that air on their respective Channels, including by producing the Works and by assignment. The copyrighted material includes Works registered with the United States Copyright Office and additional unregistered Works.[8] Several of the Works involve series, for which each episode constitutes a separate copyrighted Work.

15.     DISH entered into signed, written licensing agreements with the Networks granting DISH the exclusive right to distribute and publicly perform the Works that air on the Channels in

---

[8]Exhibit 1 (illustrative list of Works subject to registration) and Exhibit 2 (illustrative list of unregistered Works).

the United States, by means that include satellite, over-the-top (OTT), internet protocol television (IPTV), and internet.

16.    DISH's exclusive rights to distribute and publicly perform the Works were in effect when Defendants transmitted them to United States Subscribers. DISH's exclusive distribution and public performance rights remain in effect with respect to Works aired on many of the Channels.

### Defendants' Wrongful Conduct

17.    Defendants distribute, sell, and promote Service Subscriptions to United States Subscribers and United States Resellers, and those resellers in turn distribute, sell, and promote Service Subscriptions to additional United States Subscribers. The Service Subscriptions provide access to the Service.

18.    Defendants promote the Service to United States Subscribers and United States Resellers on their Websites, claiming to be the "BEST IPTV PROVIDER" and the Service is "the Ultimate IPTV Service" that provides "all TV you love" and "all your favorite TV in one place" with "over 18,000 live channels" and "over 8,400 shows," allowing United States Subscribers to "stream all [their] favourite channels, [and] full seasons of exclusive series" and to gain "full access to the greatest and latest shows."[9]

19.    Defendants offer United States Subscribers a 36-hour free trial to the Service and sell Service Subscriptions for one device for $28.50 for six months, $39 for one year, $59 for two years, and $100 for four years.[10]

20.    Defendants also leverage their Websites to promote the Service to United States Resellers, defining a reseller as "someone that acquires a certain amount of credit to sell IPTV accounts to a third party." Defendants offer United States Resellers the opportunity to rebrand the

---

[9] https://lemotv.com/; https://kemoiptv.com/
[10] https://lemotv.com/; https://kemoiptv.com/

6

Service under their own name for selling to United States Subscribers, providing a website for $145 or $165 and an app for $199. United States Resellers then purchase monthly credits from Defendants, which each represent one month of service, priced at $150 for 100 credits, $290 for 200 credits, $560 for 400 credits, $999 for 740 credits, $2000 for 1550 credits, and $3000 for 2400 credits.[11] Screenshots from the Websites, provided below, illustrate these offerings to United States Resellers.





21.    Defendants use an IPTV panel—a software-based web interface—to add and activate devices for United States Subscribers who purchase Service Subscriptions directly from

---

[11] https://lemotv.com/reseller/; https://kemoiptv.com/reseller/

them. Defendants also provide each United States Reseller with access to an IPTV panel where "[a]fter logging in successfully you can create accounts for different devices and can deal with clients through it."[12] In other words, United States Resellers use their IPTV panels to add and activate devices for United States Subscribers who buy Service Subscriptions from them.

22.     Some of the United States Resellers provide a channel list on their websites that includes the Channels airing the Works.[13]

23.     The Service transmits the Works to United States Subscribers soon after the original authorized transmission. Defendants take broadcasts or streams of the Works, transfer them to one or more computer servers provided, controlled, and maintained by Defendants and then the Works are transmitted to United States Subscribers through OTT delivery.

24.     Defendants control the transmission of the Works on the Service.  This is supported by Defendants' Terms and Conditions, which state "Channels and VOD in any package are subject to update, change, or removal at any time without prior notice," "[w]e perform maintenance to our servers from time to time," and "for any issue that comes to the servers, stopping or not working content contact us and we will do our best to fix the problems."

25.     United States Subscribers can receive the Works from the Service by: (1) powering on an Android device and connecting it to a television or monitor and the internet; (2) downloading the Lemo app, Kemo app, a reseller's custom app, or another supported streaming app identified on Defendants' Websites[14] (collectively "App") to the Android device; (3) purchasing a Service Subscription from Defendants or a reseller and providing them with the name of their device, App, and MAC Address of the Android device for activation; (4) entering the login credentials received

---

[12] https://lemotv.com/reseller/; https://kemoiptv.com/reseller/
[13] https://bestusiptv.com/channel/;     https://www.dynasty-iptv.com/en/channels-list/;     https://honeybeeiptv.io/wp-content/uploads/2023/03/FULL_Channel_List.xlsx; https://slingtvbox.com/channel-list/
[14] https://lemotv.com/setup-guides/; https://kemoiptv.com/setup-guides/

from Defendants or a reseller into the App, including the URL, username, and password; and (5) selecting the Channels. Defendants provide setup guides to assist United States Subscribers in entering the login credentials into the App.[15]

26.     Defendants have actual knowledge that the transmission of the Works on the Service infringe DISH's copyrights. DISH and Networks sent at least 96 notices of infringement to Defendants from February 17, 2021 to the filing of this Complaint, requesting the removal of the Works. Defendants have not responded to DISH or Networks concerning any of the notices of infringement.

27.     DISH and Networks also sent at least 272 notices of infringement to Defendants' hosting providers associated with the Service from February 17, 2021 to the filing of this Complaint, requesting the removal of the Works. Upon information and belief, at least some notices of infringement that DISH and Networks sent to hosting providers were forwarded to Defendants. Even when these hosting providers removed the unauthorized content based on Defendants' copyright infringement, Defendants intentionally interfered with the takedown efforts by, for example, transmitting the Works from different hosting providers or locations.

## CLAIMS FOR RELIEF

### Count I

### Direct Copyright Infringement Under 17 U.S.C. § 501

28.     DISH repeats and realleges the allegations in paragraphs 1-27.

29.     DISH is a copyright owner under 17 U.S.C. § 106 because, at all relevant times, DISH held the exclusive rights to distribute and publicly perform the Works in the United States, by means that include satellite, OTT, IPTV, and internet.

---

[15] https://lemotv.com/setup-guides/; https://kemoiptv.com/setup-guides/

30.     The Works are copyrightable subject matter because they are original audiovisual works fixed in a tangible medium of expression. DISH's copyrights in the Works arise under laws of nations other than the United States that are parties to copyright treaties with the United States, including Egypt, Lebanon, Saudi Arabia, India, and Bangladesh where the Works were authored and first published.

31.     The Works constitute non-United States works under 17 U.S.C. §§ 101 and 411, and therefore registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action for the Works. Nonetheless, numerous Works are registered with the United States Copyright Office.

32.     DISH's exclusive rights to publicly perform the Works were directly infringed by Defendants' unauthorized transmission of the Works to United States Subscribers. The Works were transmitted from computer servers controlled by Defendants to United States Subscribers who accessed the Works using Service Subscriptions when DISH's exclusive rights to publicly perform the Works were in effect.

33.     DISH has not authorized Defendants to publicly perform the Works in any manner.

34.     The infringement of DISH's rights in each Work constitutes a separate and distinct act of copyright infringement.

35.     Defendants actions were willful, malicious, intentional, and purposeful, and in disregard of and with indifference to the rights of DISH. The actions of Defendants are continuing.

36.     Unless enjoined by the Court, Defendants will continue engaging in acts that cause substantial and irreparable injury to DISH that includes lost sales, damage to its reputation, and loss of goodwill for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, DISH prays for judgment against Defendants as follows:

A.    A permanent injunction under 17 U.S.C. § 502 that prohibits Defendants, and any of their agents, servants, employees, attorneys, or any other persons acting in active concert or participation with them (including resellers of the Service Subscriptions), from:

1.    transmitting, streaming, distributing, or publicly performing in the United States, with any Service, Subscription, any other device, application, service, or process, any of the Channels or Works;

2.    distributing, selling, providing, or promoting any product or service in the United States, including any Service or Subscription, that comprises the whole or part of a network or service for the distribution or public performance of any of the Channels or Works;

3.    advertising, displaying, or marketing any Service, Subscription, or other service or device in connection with any of the Channels or Works;

4.    inducing or contributing to another's conduct that falls within 1, 2, or 3 above; and

5.    selling, leasing, licensing, assigning, conveying, distributing, loaning, encumbering, pledging, or otherwise transferring, whether or not for consideration or compensation, any part of their infringing operations;

B.    Statutory damages up to $150,000 for each registered Work infringed (including the 171 registered Works identified in Exhibit 1) under 17 U.S.C. § 504(c), or Defendants' profits that are attributable to the infringement of those registered Works under 17 U.S.C. § 504(b);

C.    Defendants' profits that are attributable to the infringement of each unregistered Work under 17 U.S.C. § 504(b);

D.       DISH's attorneys' fees and costs under 17 U.S.C. § 505;

E.       Impoundment and disposition of all infringing articles under 17 U.S.C. § 503;

F.       Permanently transferring each domain name that any of the Defendants used in connection with the infringement to DISH;

G.       Pre-judgment and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law;

H.       Such additional relief as the Court deems just and equitable.

Dated: April 7, 2025                    Respectfully submitted,

**HAGAN NOLL & BOYLE LLC**

By: /s/ Stephen M. Ferguson
Stephen M. Ferguson (attorney-in-charge)
Texas Bar No. 24035248
Southern District of Texas Bar No. 614706
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Joseph H. Boyle (of counsel)
Texas Bar No. 24031757
Southern District of Texas Bar No. 30740

**Counsel for Plaintiff DISH Network L.L.C.**