UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> DOES 1-10, § <br> d/b/a Lemo TV and Kemo IPTV, § <br> § <br> Defendants. § <br> § | Civil Action No. 4:25-cv-01587 |

**PLAINTIFF DISH NETWORK L.L.C.'S MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff DISH Network L.L.C. ("DISH") respectfully moves the Court for leave to take limited discovery prior to the Federal Rule of Civil Procedure 26(f) conference for the purpose of identifying Defendants DOES 1-10 ("Defendants").

### I.   Factual Background

DISH initiated this direct copyright infringement lawsuit to halt Defendants' unauthorized use of television channels exclusively licensed to DISH for United States transmission ("Channels") and their illegal transmission of DISH's copyrighted programming ("Works") aired on those Channels via the internet throughout the United States. Defendants stream the Works through their illicit service, Lemo TV and Kemo IPTV (the "Service"), to subscribers who purchase access through Defendants' subscriptions ("Service Subscriptions"). These Service Subscriptions are sold directly by Defendants and indirectly through their resellers ("Resellers"). To promote, manage, and operate the Service, as well as the Lemotv.com and Kemoiptv.com websites and the Resellers' websites, Defendants rely on numerous third-party providers, including 24 Shells Inc., Cloudflare, Inc., Des Equity LLC, Hivelocity, LLC, Namecheap, Inc., Tucows, Inc., GoDaddy.com, LLC, Domains by Proxy, LLC, Digitalocean LLC, Newfold Digital, Inc., Google

LLC, Coinbase, Inc., PayPal, Inc., Meta Platforms, Inc., and X Corp. As detailed below, Defendants' true identities and physical addresses remain unknown, necessitating subpoenas to these third parties to reveal them.

### A.     DISH's Television Service and Copyrighted Works

DISH, a leading pay-TV provider in the United States, serves millions of subscribers nationwide and offers more than 325 international television channels in 27 languages, making it one of the largest providers of such content in the country. (Declaration of Elizabeth Riemersma ("Riemersma Decl.") ¶ 2.) DISH secured exclusive rights to the 22 Arabic, Hindi, and Bangla language channels listed as the Channels in the complaint through signed, written agreements. (*Id.* ¶ 3; Dkt. 1 ¶¶ 13, 15.) These agreements grant DISH the exclusive right to distribute and publicly perform all Works aired on the Channels in the United States via satellite, OTT, Internet Protocol Television ("IPTV"), and the internet. (Riemersma Decl. ¶ 3; Dkt. 1 ¶ 15.) DISH's exclusive rights remain active for the Works broadcast on many of these Channels. (Riemersma Decl. ¶ 3; Dkt. 1 ¶ 16.)

### B.     Defendants Infringe DISH's Exclusive Rights in the Works

Defendants illegally transmit the Works aired on the Channels across the United States via the internet to subscribers of their Service. (Declaration of Gregory Duval ("Duval Decl.") ¶¶ 27-28, Ex. 21; Dkt. 1 ¶¶ 4, 7, 23-25.) They capture broadcasts or streams of the Channels and transfer them to computer servers they provide, control, and maintain, including those hosted by 24 Shell Inc., Cloudflare, Inc., Des Equity LLC, and Hivelocity, Inc. (Duval Decl. ¶¶ 28-29; Dkt. 1 ¶¶ 7, 23-24.) Monitoring of the Service repeatedly confirmed the presence of the Channels. (Duval Decl. ¶ 28, Ex. 21.)

Defendants promote and sell Service Subscriptions through their Lemotv.com and Kemoiptv.com websites or via the Resellers through at least the following websites: Xtremehdiptv.org, Fubo-iptv.com, 1dollariptv.com, Dynastyiptv.shop, Caliptostreams.com, Kemoiptv.shop, Geministreamz.us, TV-wave.com, Slingtvbox.com, Honeybeeiptv.org, 4kliveiptv.com, Bestusiptv.com, Honeybee-tv.com, Honeybeeiptv.io, Dynastyiptv.com, and Dynasty-iptv.com. (Duval Decl. ¶¶ 4-5, 20-23, Exs. 1-2; Dkt. 1 ¶ 7, n.2.) Defendants and their Resellers use PayPal, Inc., Coinbase, Inc., and other cryptocurrency exchanges to process payments for these subscriptions. (Duval Decl. ¶ 4.) The websites rely on service providers such as Namecheap, Inc., Tucows, Inc., GoDaddy.com, LLC, and Domains By Proxy, LLC for domain registration and privacy protection; Digitalocean LLC, Namecheap, Inc., Newfold Digital, Inc., and Google LLC for hosting; and Cloudflare, Inc. for reverse proxy, pass-through security, and name server services. (Duval Decl. ¶¶ 6-23, Exs. 3-20; Dkt. 1 ¶¶ 7, 11.) Defendants also market the Service through Meta Platforms, Inc. (Facebook/Instagram) and X Corp. (Twitter/X). (Duval Decl. ¶¶ 24-26; Dkt. 1 ¶ 11.)

The aforementioned service providers and Resellers possess information identifying the Defendants—those operating the Service, illegally transmitting the Works, and promoting and selling Service Subscriptions—and are thus the intended recipients of DISH's subpoenas. (Duval Decl. ¶¶ 30-31; Ferguson Decl. ¶¶ 2-3, Exs. 1-17.)

## II. Argument and Authorities

### A. Good Cause Exists to Grant DISH Leave to Conduct Expedited Discovery

#### 1. Legal Standard

Discovery may be conducted prior to the Rule 26(f) conference when authorized by court order. Fed. R. Civ. P. 26(d)(1). District courts in the Fifth Circuit apply a "good cause" standard

3

to determine whether to allow expedited discovery. *See, e.g.*, *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239-40 (S.D. Tex. 2011) (citing cases); *Turner Indus. Grp., Inc. v. Int'l Union of Operating Eng'rs, Local 450*, No. H-13-0456, 2013 WL 2147515, at *3 (S.D. Tex. May 10, 2013). "Good cause exists 'where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" *Turner*, 2013 WL 2147515, at *3 (quoting *St. Louis Group*).

When evaluating requests for expedited discovery to identify anonymous internet users, courts consider the following: "(1) whether the plaintiff makes a prima facie showing of harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the necessity of the subpoenaed information to advance the claim; and (5) the user's expectation of privacy." *Id.*; *Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified By Hash: B7FEC872874DoCC9B1372ECE5ED07AD7420A3BBB*, No. 4:12-cv-00963, 2012 WL 4387420, at *1 (S.D. Tex. Sept. 25, 2012); *Indigital Sols., LLC v. Mohammad*, No. H-12-2428, 2012 WL 5825824, at *2 (S.D. Tex. Nov. 15, 2012); *Combat Zone Corp. v. Does 1-13*, No. 3:12-CV-3927-B, 2013 WL 230382, at *4 (N.D. Tex. Jan. 22, 2013). Consideration of the foregoing factors demonstrates that there is good cause to grant DISH's request for expedited discovery.

### 2. DISH States a Prima Facie Claim of Actionable Harm Against Defendants

DISH asserts direct copyright infringement claims against Defendants under the Copyright Act. (Dkt. 1 ¶¶ 4, 8, 28-36.) A claim for direct copyright infringement has two essential elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). DISH pleads a prima facie claim for direct copyright infringement under the Copyright Act by alleging that it

owns valid copyrights in the Works that aired on the Channels and that Defendants infringed DISH's copyrights in those Works. (Dkt. 1 ¶¶ 1, 4, 7, 9-10, 13-16, 23-25, 28-36.) Defendants directly infringed DISH's exclusive public performance rights by transmitting the Works. (*Id.*)

### a.     DISH's Copyright Ownership and Protection

DISH holds the exclusive right to distribute and publicly perform in the United States the Works that air on the Channels by means including satellite, OTT, IPTV, and internet, pursuant to signed, written agreements. *See* Part I.A., *supra*. As the exclusive licensee of the distribution and public performance rights, DISH has an ownership interest in these copyrights and is entitled to sue for Defendants' infringement. *See* 17 U.S.C. § 501(b); *see also Davis v. Blige*, 505 F.3d 90, 100 n.10 (2d Cir. 2007) ("Under current copyright law, exclusive licenses are recognized as a type of an ownership interest … Exclusive licensees may sue without joining the copyright owners") (citations omitted). DISH's copyright ownership is therefore adequately pled in the complaint. *See DISH Network L.L.C. v. TV Net Sols., LLC*, No. 6:12-cv-1629-Orl-41TBS, 2014 WL 6685351, at *4-5 (M.D. Fla. Nov. 25, 2014) (granting default judgment and finding DISH's copyright ownership and standing was sufficiently shown based on programming agreements that conveyed exclusive distribution rights to DISH); *Intercom Ventures, LLC v. FasTV, Inc.*, No. 13 C 232, 2013 WL 2357621, at *4 (N.D. Ill. May 28, 2013) (finding copyright ownership was sufficiently alleged where complaint stated that the plaintiff held the exclusive right to distribute television programs pursuant to written agreements entered into with channel providers).

A published work is protected under the Copyright Act provided: "(1) on the date of first publication, one or more of the authors … is a national, domiciliary, or sovereign authority of a treaty party … ; or (2) the work is first published … in a foreign nation that, on the date of first publication, is a treaty party." 17 U.S.C. § 104(b). The Works that air on the Channels were

authored and first published in Egypt, Lebanon, Saudi Arabia, India, and Bangladesh. (Dkt. 1 ¶ 30.) These nations are a party to a copyright treaty adhered to by the United States, the Berne Convention for the Protection of Literary and Artistic Works, and therefore each is a "treaty party" under section 104(b). 17 U.S.C. § 101; United States Copyright Office, Circular 38(a), International Copyright Relations of the United States, *available at* www.copyright.gov/circs/circ38a.pdf. The works at issue thus satisfy the requirements of section 104(b) for protection under the Copyright Act.

DISH's copyrighted Works need not be registered with the United States Copyright Office to be protected. Registration is only necessary for a "United States work." 17 U.S.C. § 411(a). A work first published in a treaty party is not a "United States work." *See id.* § 101 (defining the term as a work first published in the United States, simultaneously in the United Sates and another place, or in a foreign nation not a treaty party); *see also Jetform Corp. v. Unisys Corp.*, 11 F. Supp. 2d 788, 790 (E.D. Va. 1998) (holding registration not required where complaint alleged the copyrighted work was a "Berne Convention work whose country of origin is not the United States").

However, 171 of DISH's copyrighted Works are registered with the United States Copyright Office, which creates a presumption as to ownership and validity. (Dkt. 1 ¶¶ 14, Prayer B., Ex. 1); *see* 17 U.S.C. § 401(c); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) ("A certificate of registration, if timely obtained, is prima facie evidence of both that a copyright is valid and that the registrant owns the copyright."). The first element of DISH's copyright infringement claim is sufficiently pled.

    b.  **Defendants Infringed DISH's Copyrights in the Works**

The second element of DISH's claim for copyright infringement requires "copying of

6

constituent elements of the work that are original." *Feist Publ'ns, Inc.*, 499 U.S. at 361. The term "copying" means to violate one of the exclusive rights granted to copyright owners in 17 U.S.C. § 106, which include the right to reproduce, distribute, or publicly perform copyrighted material. *See CoStar Grp., Inc. v. LoopNet, Inc.,* 373 F.3d 544, 549 (4th Cir. 2004); *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010).

Defendants take broadcasts or streams of the Works, transfer them to one or more servers provided, controlled, and maintained by Defendants, and then transmit the Works to subscribers of the Service throughout the United States without authorization from DISH. (Dkt. 1 ¶¶ 7, 23-24.) These allegations establish that Defendants are directly infringing DISH's exclusive public performance right in the Works. *See Am. Broad. Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2506-11 (2014) (holding that provider of centralized equipment used to stream broadcast programming to its subscribers infringed content owners' right of public performance).

### 3.     DISH's Subpoenas are Narrowly Tailored to Identify Defendants

DISH requests permission to serve subpoenas on third-party service providers and Resellers that Defendants use to operate the Service and promote, sell, distribute, and receive payments for Service Subscriptions. DISH's subpoenas have been filed with the Court and are reasonably calculated and narrowly tailored to reveal the identity of Defendants. (Ferguson Decl. ¶¶ 2-3, Exs. 1-17.)

DISH's subpoenas generally seek information to identify the name and contact information for all account holders of record and persons paying for and managing the accounts with the third-party service providers associated with the Service. The discovery of similar information for the sole purpose of identifying anonymous defendants has been authorized on many occasions. *See Combat Zone,* 2012 WL 230382, at *5 (finding proposed subpoenas for "'ISPs to produce any and

7

all documents and/or information sufficient to identify the user or users' of the IP addresses" was sufficiently specific to satisfy the second factor); *DISH Network L.L.C. v. Does,* No. 4:21-cv-859, Dkt. 8 (S.D. Tex. Apr. 1, 2021) (authorizing DISH to serve similar subpoenas on third-party content delivery networks, service providers, and resellers to identify the DOE defendants); *DISH Network L.L.C. v. Does,* No. 4:19-cv-2994, Dkt. 6 (S.D. Tex. Sept. 19, 2019) (same); *DISH Network L.L.C. v. Does,* No. 4:21-cv-581, Dkt. 7 (S.D. Tex. Apr. 6, 2021) (authorizing DISH to serve similar subpoenas on third-party service providers to identify the DOE defendants); *DISH Network L.L.C. v. Does,* No. 4:19-cv-4563, Dkt. 6 (S.D. Tex. Dec. 2, 2019) (same); *DISH Network L.L.C. v. Does,* No. 4:17-cv-1618, Dkt. 6 (S.D. Tex. June 19, 2017) (same); *Nagravision SA v. Does,* No. 4:14-mc-02883, Dkt. 5 (S.D. Tex. Dec. 12, 2014) (authorizing plaintiff to serve subpoenas on third-party service providers to identify the DOE defendants).

### 4. DISH's Subpoenas are Necessary to Identify Defendants

The third and fourth factors examine whether there is an alternate means for obtaining information requested in the subpoenas and whether that information is necessary to advance the claims. *Turner*, 2013 WL 2147515, at *3. DISH conducted a thorough investigation and thus far is only able to identify Defendants' accounts with various third-party service providers. (Duval Decl. ¶¶ 4-29, 31.) DISH does not have a means for identifying Defendants other than its proposed subpoenas. (*Id.* ¶ 31.) Without this information, DISH will be unable to advance this case and stop the unauthorized transmission of the Works. The third and fourth factors weigh in DISH's favor. *See, e.g.*, *Combat Zone*, 2013 WL 230382, at *5 (finding third and fourth factors satisfied because subpoena to ISP was necessary to identify unknown infringer and case could not proceed until defendant was identified and served); *Well Go USA*, 2012 WL 4387420, at *2 (reaching same conclusion).

### 5. DISH's Subpoenas Will Not Violate Defendants' Expectation of Privacy

The final factor considers the effect the discovery might have on Defendants' expectation of privacy. *Turner*, 2013 WL 2147515, at *3. Defendants are directly infringing DISH's exclusive public performance right by transmitting the Works on the Service. *See* Part II.A.2.b., *supra*. Defendants cannot rely on a First Amendment right to anonymous speech to prevent DISH from discovering their copyright infringement. *See West Coast Prods., Inc. v. Does 1-351*, No. 4:12-cv-00504, 2012 WL 2577551, at *4 (S.D. Tex. July 3, 2012) (denying Doe defendant's attempt to prevent ISP from disclosing his identity on the basis of privacy and their First Amendment right to anonymous speech, reasoning that if "anonymity is used to mask copyright infringement or to facilitate such infringement by others, the First Amendment is no protection"); *see also Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1188 (5th Cir. 1979) ("The first amendment is not a license to trammel on legally recognized rights in intellectual property.").

### III. Conclusion

For the foregoing reasons, DISH respectfully requests that the Court grant this Motion and authorize DISH to conduct limited expedited discovery, including the issuance of the subpoenas attached to the Ferguson declaration as Exhibits 1-17.

Dated: April 7, 2025

Respectfully submitted,

**HAGAN NOLL & BOYLE LLC**

By: /s/ Stephen M. Ferguson
Stephen M. Ferguson (attorney-in-charge)
Texas Bar No. 24035248
Southern District of Texas Bar No. 614706
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024

Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Joseph H. Boyle (of counsel)
Texas Bar No. 24031757
Southern District of Texas Bar No. 30740

**Counsel for Plaintiff DISH Network L.L.C.**